UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DIALLO HAMMOND,

               Petitioner,

      v.

HAROLD D. GRAHAM,

               Respondent.
_____

**DECISION
and
ORDER**

**12-CV-1172F
(Consent)**

APPEARANCES:        DIALLO HAMMOND, *Pro Se*
                            09-B-1852
                            Auburn Correctional Facility
                            Box 618
                            Auburn, New York 13021

                            FRANK A. SEDITA, III
                            DISTRICT ATTORNEY, ERIE COUNTY
                            Attorney for Respondent
                            ASHLEY R. SMALL
                            Assistant District Attorney, of Counsel
                            25 Delaware Avenue
                            Buffalo, New York 14202

## JURSIDICTION

Petitioner commenced this action on November 26, 2012, requesting habeas

corpus relief under 28 U.S.C. § 2254 ("§ 2254").  This matter is before the court on

consent pursuant to 28 U.S.C. § 636(c) (Doc. No. 10).

## BACKGROUND

On November 26, 2012, Petitioner Diallo Hammond ("Petitioner" or "Hammond"),

proceeding *pro se*, filed a petition (Doc. No. 1) ("Petition"), seeking habeas corpus relief

challenging Petitioner's April 29, 2009 conviction by jury in New York Supreme Court,

Erie County, for violations of New York Penal Law ("N.Y. Penal Law")[1] §160.15(4)
(Robbery in the First Degree ), § 160.10(1) (Robbery in the Second Degree), and §
165.40(2) (Criminal Possession of Stolen Property in the Fifth Degree).  Hon. Penny M.
Wolfgang, N.Y. Supreme Court Justice, presided at Petitioner's trial.

On October 10, 2008, Petitioner was sentenced as a second violent felony
offender pursuant to N.Y. Penal Law § 70.04 ("§ 70.04"), to a term of 17 years with five
years of post-release supervision based on Petitioner's conviction on the First Degree
Robbery count; a term of 15 years with five years post-release supervision on
Petitioner's conviction on the Second Degree Robbery count; and a sentence of one
year on the Fifth Degree Criminal Possession conviction to run concurrently to
Petitioner's sentences on the First and Second Degree Robbery counts.  Certificate of
Conviction - Imprisonment, January 3, 2013.[2]

On May 6, 2011, Petitioner's convictions were unanimously affirmed by the New
York State Supreme Court Appellate Division, Fourth Department ("the Appellate
Division").  *See People  v. Hammond*, 922 N.Y.S.2d 706 (App. Div. 4th Dep't. 2011).
Leave to appeal to the New York Court of Appeals ("the Court of Appeals") was denied
on August 26, 2011.  *See People  v. Hammond*, 954 N.E.2d 96 (N.Y. 2011).

In the Petition, Petitioner asserts four grounds for federal habeas relief,
specifically, that the convictions and sentences are based on (1) insufficient evidence to

---

[1] Unless otherwise indicated all N.Y. Penal Law references are to McKinney's Consolidated Laws of New York (McKinney's 2008).

[2] References to "Certificate of Imprisonment" are to the Certificate of Conviction-Imprisonment signed and sealed by the Erie County Clerk on January 3, 2013, and filed in the state court records.

support Petitioner's defense of duress ("First Ground"); (2) an improper *Sandoval*[3] ruling

("Second Ground"); (3) prosecutorial misconduct ("Third Ground"); and (4) improper

handling of jury notes ("Fourth Ground"), all in violation of the Due Process Clause of

the Sixth and Fourteenth Amendments.  On January 18, 2013, Respondent filed an

Answer to the Petition (Doc. No. 5), accompanied by Respondent's Memorandum of

Law in Opposition to Petition for a Writ of Habeas Corpus (Doc. No. 6) ("Respondent's

Memorandum").

On May 13, 2013, Petitioner filed Petitioner's Motion to Amend the Petition (Doc.

No. 12) ("Petitioner's Motion to Amend") requesting only Ground One (duress) and

Ground Four (improper handling of jury notes) remain under consideration for this

court's review.  Petitioner's motion to amend was granted on July 15, 2014 (Doc. No.

15).[4]

On July 10, 2014, Petitioner filed a Memorandum of Law in Support of the

Petition for Habeas Corpus (Doc. No. 14) ("Petitioner's Memorandum").  By letter dated

July 15, 2014 (Doc. No. 16), Respondent alleges that Petitioner's Memorandum of Law

dated July 10, 2014 (Doc. No. 14) is untimely[5] and should be disregarded, and rests

Respondent's opposition on Respondent's previously filed Answer and Respondent's

Memorandum.  Oral argument was deemed unnecessary.

---

[3] *People v. Sandoval*, 314 N.E.2d 413 (N.Y. 1974) (permitting hearing to be conducted, upon defendant's request, to determine the extent to which the defendant, should he choose to testify, may be subject to impeachment on cross-examination as to prior bad acts).

[4] Judicial notice is taken regarding Petitioner's letter dated July 19, 2014, wherein Petitioner correctly highlights an error in the Order dated July 15, 2014 (Doc No. 15), incorrectly referencing Ground One and Ground Two as Ground Two and Ground Three.  As indicated, Background, *supra*, at 3, only Ground One (duress) and Ground Four (improper handling of jury notes) remain under consideration for this court's review.

[5] The court notes that Petitioner's Reply, dated July 5, 2014, mailed from Auburn Correctional Facility on July 7, 2014, is dated two days past the July 3, 2014 deadline contained in this court's order on May 20, 2014.  (Doc. No. 13).  Respondent does not allege any prejudice results from such *de minimus* delay. The court thus considers the Petition on its merits.

Based on the following, the Petition is DISMISSED.

# FACTS[6]

As stated, Petitioner challenges his conviction based on a September 3, 2008 robbery in Buffalo, New York, in which Petitioner, acting as an accomplice to a co-defendant, allegedly robbed Anthony Lee ("Lee") near Lee's place of work.  At Petitioner's October 27, 2008 arraignment, Petitioner pleaded not guilty.  Arraignment Hearing Tr. at 2. [7]  A suppression hearing was held on February 4, 2009.  Suppression Tr. at 8.[8]  During the hearing, Buffalo Police Detective Al Liberatore ("Liberatore") testified that five minutes after receiving a radio dispatch pertaining to a robbery, Liberatore went to the location where the robbery occurred to question Lee about the incident.  Suppression Tr. at 9.  Upon receiving a description of the perpetrators from Lee, Liberatore dispatched a description of the suspects over his police car radio and proceeded to drive around the area with Lee in search of the suspects.  Suppression Tr. at 10.  Lee identified Petitioner's co-defendant George Hughes ("Hughes") as one of the suspects whom Liberatore then arrested, Suppression  Tr. at 10-22; Liberatore and Lee then continued driving in order to apprehend the second perpetrator.  Suppression Tr. at 22.  After 30 to 40 minutes, Suppression Tr. at 28, Lee observed Petitioner standing on a street corner with three other men and identified Petitioner as one of the robbers.  Suppression Tr. at 32.  Liberatore testified that prior to approaching Petitioner to question Petitioner about the robbery, he saw Petitioner hand a cigarette to one of the

---

[6]Taken from the Petition, Response, Memorandum, exhibits and state court records filed in this action.
[7] References to "Arraignment Hearing Tr. __" are to the transcript of Petitioner's Arraignment held on October 27, 2008.
[8] References to "Suppression Tr. at _" are to the transcript pf Petitioner's Suppression hearing held on February 4, 2009.

men in the group.  Suppression Tr. at 24.  Seeing a second police car driving in the

area, Liberatore waved to the car for backup, and, approaching Petitioner, Liberatore

and the two officers from the second car, Officers Maiola ("Maiola") and Evans

("Evans"), engaged in a scuffle with Petitioner, tackled Petitioner to the ground and

placed Petitioner in handcuffs.  Suppression Tr. at 36.  After frisking Petitioner for a

weapon, Liberatore placed Petitioner in the second squad car while Petitioner was

yelling at Lee.  Suppression Tr. at 36.

Evidence at Petitioner's trial established that at approximately 3:00 P.M. on

September 3, 2008, Petitioner and Hughes approached Lee in the parking lot of Save-

A-Lot ("Save-A-Lot"), a grocery store located in the Broadway Market in Buffalo, New

York where Lee worked as a shopping cart attendant, and told Lee that they wanted to

smoke marijuana with Lee.  (Tr. at 44).  After talking for a few minutes, Petitioner and

Hughes left the parking area where Lee was working.  (Tr. at 45).  Hughes returned a

half an hour later and told Lee that Petitioner and Hughes were down the street and

wanted Lee to come and join them.  (Tr. at 46).  Lee proceeded to the house across the

street from Save-A-Lot to join Petitioner and Hughes.  *Id.*  After talking, laughing, and

hanging out on the porch of the house for a short time, Petitioner and Hughes told Lee

they were going to the side of the house to smoke.  (Tr. at 47).  Lee told Petitioner and

Hughes that he was going back to work, and Hughes told Lee "come on, man, come on"

while Petitioner approached the side of Lee's body.  (Tr. at 47).  After Lee repeated his

desire to return to work, Petitioner looked in the direction of Hughes, instructing Hughes

to "pull that thing out, pull that thing out."  (Tr. at 48).  Hughes told Lee to empty his pant

pockets while at the same time pushing a hard silver and brown metal object into Lee's

side that Lee identified as a gun.  (Tr. at 49-50).  Lee held his hands in the air while

Petitioner continued to search Lee's pants pockets (Tr. at 50), from which Petitioner

pulled a packet of cigarettes, $60 dollars cash, and a gold ring.  (Tr. at 50-51).

Petitioner and Hughes told Lee to walk toward Paderewski Street (Tr. at 52).  Lee asked

why Petitioner and Hughes were robbing him, and Petitioner told Lee that Hughes made

him do it.  (Tr. at 52).  Hughes told Lee that he made Petitioner steal from Lee because

Hughes would shoot them both.  (Tr. at 52).  Petitioner turned and ran down the street

yelling that he would bring back Lee's belongings at 8:00 P.M. that night.  (Tr. at 52).

Hughes chased Petitioner down the street and around the corner (Tr. at 52), and Lee

returned to Save-A-Lot to report the robbery to a security guard who then radioed the

police.  (Tr. at 59).


## DISCUSSION

### 1. Standard of Review

In reviewing a state prisoner's petition pursuant to 28 U.S.C. § 2254, a district

court must make an independent determination as to whether the petitioner is in

custody in violation of any rights under the Constitution, or any laws or treaties of the

United States.  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991), *reh'g denied*, 501

U.S. 1277 (1991).

In reviewing habeas petitions, a federal court is not permitted to act as appellate

courts to review matters within the jurisdiction of the state courts, or to review specific

rulings and decisions of state trial and appellate courts not involving federal

constitutional claims; rather, the court is to determine whether the proceedings in the

6

state court, as challenged by a habeas petition, amount to a violation of the Petitioner's federal constitutional rights as declared by the Supreme Court.  28 U.S.C. § 2254(d)(1); *Coleman*, 501 U.S. at 729.  Accordingly, federal review of state court convictions are limited to errors of such federal constitutional magnitude as to necessarily deny the criminal defendant the right to a fundamentally fair trial.  *See Cupp v. Naughton*, 414 U.S. 141, 147 (1973).  Pursuant to 28 U.S.C. § 2254(e)("§ 2254(e)"), formerly 28 U.S.C. § 2254(d), the state court's determination as to evidentiary matters is presumed correct, unless the federal habeas court concludes that the relevant state court determination is not fairly supported by the record, *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981), and it is the burden of the petitioner to establish, by clear and convincing evidence, that the court's factual determination is erroneous.  28 U.S.C. § 2254(e)(1).  Section 2254(e), applies by its terms, "to factual determinations made by state courts, whether the court be a trial court or an appellate court." *Sumner*, 449 U.S. at 547.

Pursuant to § 2254, as amended by Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court must give substantial deference to a state court determination that has "adjudicated [the federal constitutional claim] on the merits."  28 U.S.C. § 2254(d); *Sellan v. Kuhlman*, 261 F.3d 303, 309-10 (2d Cir. 2001).  Specifically, AEDPA requires that where a state court has adjudicated the merits of a petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) ("§ 2254(d)").

Under *Williams v. Taylor,* 529 U.S. 362, 364 (2000), a federal habeas court may grant relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Id.* This AEDPA requirement for habeas relief applies to petitions filed on or after AEDPA's April 24, 1996 effective date, *see, e.g.*, *Williams*, 529 U.S. at 402; *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Smith v. McGinnis*, 208 F.3d 13, 15 (2d Cir. 2000) (*per curiam*), *cert. denied*, 531 U.S. 840 (2000), and thus applies to the Petition.  State court decisions involve unreasonable application of Supreme Court caselaw where such decisions "identif[y] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." *Id.* A federal habeas court must therefore apply the § 2254(d) deferential review standard where the state court has "adjudicated [the federal claim] on the merits" 28 U.S.C. § 2254(d), and, in instances where claims have not been adjudicated on the merits, apply the pre-AEDPA *de novo* review standard, even where the petition was filed after the effective date of the statute. *See Sellan*, 261 F.3d at 314; *Boyette v. Lefevre*, 246 F.3d 76, 89, 91 (2d Cir. 2001).

In this case, Petitioner contends that the prosecution did not establish proof beyond a reasonable doubt that Petitioner acted with the required intent to commit First and Second Degree Robbery.  Petitioner's Memorandum at 3-4.  The Appellate Division rejected the prosecutor's contention that Petitioner's claim of insufficient evidence was

procedurally defaulted, *Hammond*, 922 N.Y.S.2d at 707, and further disposed of

Petitioner's claim of insufficient evidence ruling "[t]he jury was entitled to discredit

defendant's self-serving statements that he was coerced into committing the crimes of

which he was convicted . . . and, viewing the evidence in light of the elements of the

crimes as charged to the jury . . . the jury's rejection of [the duress] defense is not

against the weight of the evidence." *Id*.  The Appellate Division also rejected

Petitioner's claim that the trial court committed error in its handling of two jury notes.

*Hammond*, 922 N.Y.S.2d at 708.  As the Appellate Division decided both of Petitioner's

federal claims on substantive grounds providing reasons for such disposition,

application of the deferential review standard under § 2254(d) and *Williams* is required.

## 2.  Merits of Petitioner's Claims

Petitioner, albeit confusingly, attempts to assert two grounds for habeas relief:  (1)

lack of sufficient evidence to support Petitioner's convictions in violation of the

Fourteenth Amendment due process clause, Petition ¶ 9 (d) ("First Ground"), and  (2)

violation of Petitioner's federal due process rights based on the trial court's response to

two jury notes presented during trial, Petition ¶ 11 (4) ("Second Ground").  As alleged,

Petitioner's First Ground for relief appears to conflate three separate contentions, *i.e.*,

that Petitioner's convictions were (1) against the weight of the evidence, (2) based on

insufficient evidence, and (3) negated by Petitioner's affirmative defense of duress.  In

the interest of completeness, the court accordingly addresses in turn the merits of each

of Petitioner's bases for relief under the First Ground.

## A. First Ground

### 1.     Weight of Evidence

To the extent that Petitioner contends that the verdict was against the weight of the evidence, Petitioner's Memorandum at 2, the question of weight of the evidence is  a question of state law, which precludes a federal habeas court from its review.  *Lopez v. Heath,* 2011 WL 3055415, at *7 (S.D.N.Y. Apr. 6, 2011) (quoting *Mckinnon v. Superintendent, Great Meadows Corr. Facility*, 355 Fed. Appx. 469, 475 (2d Cir. 2009)("the argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus")).  As such, this ground for relief is without merit.

## B. First Ground

### 2.     Sufficiency of the Evidence

To the extent an alleged violation of Petitioner's federal due process rights may be gleaned from the Petition, Petitioner's Memorandum at 9, ("the proof was insufficient to establish the charges because appellant had proved the affirmative defense of duress by a preponderance of the evidence. *See Jackson v. Virginia*, 443 US 307") the court reviews such claim only to provide Petitioner's claim under the First Ground with a comprehensive review.

In order to succeed on an insufficiency of the evidence claim, a petitioner seeking habeas relief must demonstrate that the adjudication of the petitioner's federal constitutional claims resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal constitutional law as determined by the Supreme Court.  28 U.S.C. § 2254(d)(1); *see Narrod v. Napoli*, 763 F.Supp.2d 359, 370

(W.D.N.Y. 2011).  The Due Process Clause of the Fourteenth Amendment protects a defendant only with respect to sufficiency of the evidence establishing the element of an offense.  *Harris v. Fischer*, 438 Fed. Appx. 11, 14 (2d Cir. 2011) citing *Jackson v. Virginia,* 443 U.S. 307, 315 (1979).

   *Jackson v. Virginia*, 443 U.S. 307 (1979) ("*Jackson*") establishes that the relevant inquiry for sufficiency of evidence for due process purposes is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found essential elements of crime beyond a reasonable doubt.  The standard set forth by the Supreme Court under *Jackson*, must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.  *Langston v. Smith*, 630 F.3d 310, 314 (2d Cir. 2011) (citing *Jackson*, 443 U.S. at 324 n. 16; and *Henry v. Ricks*, 578 F.3d 134, 138 (2d Cir. 2009)).  "'[W]here a fact to be proved is also an element of the offense . . . . it is not enough that the inferences in the government's favor are permissible . . . [T]he inferences [must be] sufficiently supported to permit a rational juror to find that the element . . . is established beyond a reasonable doubt.'" *Langston*, 630 F.3d at 314 (quoting *United States v. Martinez,* 54 F.3d 1040, 1043 (2d Cir. 1995)).  The court thus looks to the relevant state law to determine the elements of the crimes for which Petitioner challenges his convictions.

   Under New York Penal Law § 160.00, robbery is forcible stealing.  A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of:

   1. Preventing or overcoming resistance to the taking of property or to the retention thereof immediately after the taking; or

2.  Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny.

New York Penal Law § 160.00("§ 160.00").

Robbery under § 160.00 incorporates larceny, which under New York Penal Law § 155.05(1) exists when a defendant, with intent to deprive another of property or to appropriate the same to himself or a third person, wrongfully takes, obtains or withholds such property.  N.Y. Penal Law § 155.05(1) ("§ 155.05(1)").  A person is guilty of First Degree Robbery when, in the course of commission of the crime, or immediate flight therefrom, he or another participant in the crime displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm.  N.Y. Penal Law § 160.15(4) ("§ 160.15(4)").  A person is guilty of Second Degree Robbery when he forcibly steals property and is aided by another person actually present.  N.Y. Penal Law § 160.10(1) ("§ 160.10(1)").

Petitioner's contention that no reasonable jury could find Petitioner guilty of First and Second Degree Robbery based on the evidence presented at trial in this case is without merit.  Lee testified that while at Petitioner's direction Hughes was holding a gun to Lee's side (Tr. at 49), Petitioner removed cigarettes, money, and a gold ring from Lee's pockets (Tr. at 50-51), and proceeded to run from the crime scene (Tr. at 51-52). Upon such evidence a reasonable juror could find Petitioner forcibly stole Lee's property and was thus guilty of First and Second Degree Robbery beyond a reasonable doubt. Petitioner's claim on this issue is therefore also without merit.

### 3.   Duress Defense

Petitioner contends a violation of Petitioner's Fourteenth Amendment due process right in that no reasonable juror could find upon the evidence adduced at trial, that Petitioner's participation in the robbery of Lee did not result from duress placed on Petitioner by Hughes.  Petitioner's Memorandum at 3-8.  Respondent maintains that Petitioner's burden to prove duress by a preponderance of the evidence does not detract from the state's burden to prove each element of the robbery charges beyond a reasonable doubt, and thus is not cognizable for federal habeas review.  Respondent's Memorandum at 4.  Petitioner did not respond directly to this contention.

Federal habeas review of a sufficiency of the evidence claim to support an affirmative defense during trial is available only where the burden of proof necessary to establish the affirmative defense detracts from the prosecutor's burden to prove any element of the offense at trial beyond a reasonable doubt.  *See Harris v. Fischer*, 438 Fed. Appx. 11, 14 (2d Cir. 2011) (citing *Caldwell v. Russell*, 181 F.3d 731, 740 (6th Cir. 1999)) (further citation omitted))).  New York courts construe the affirmative defenses of duress, entrapment and extreme emotional distress, available under New York law, as defenses that "'do[] not serve to negate any facts of the crime which the State is to prove in order to convict.'"  *People v. Bastidas*, 494 N.E.2d 446 (N.Y. 1986) (quoting *Patterson v. New York*, 432 U.S. 197, 207 (1977)).  Duress under N.Y. Penal Law § 40.00, as to which a defendant bears the burden of proof, is therefore a separate issue from the prosecutor's burden to prove the necessary intent in the first instance, and is thus deemed constitutional.  *See Rodriguez v. Scully*, 788 F.2d 62, 65 (2d Cir. 1986) (New York statutory scheme that places the burden of proving duress on the defendant

comports with due process requirements); *Ortiz v. Scully*, 634 F.Supp. 20, 27-28 (S.D.N.Y. 1985) (finding that New York duress defense does not negate any element of the underlying crime, including intent, and therefore, does not improperly require defendant to disprove any such element) (citing *People v. Calvano*, 282 N.E. 2d 322 (N.Y. 1972)).  S*ee also Bastidas*, 494 N.E.2d at 446 (citing *Patterson*, 432 U.S. at 207; and *People v. Laietta,* 281 N.E.2d 157, 161 (N.Y. 1962) (affirmative defense of entrapment under New York law does not unconstitutionally shift burden of persuasion as to any element of crime as it is in the nature of confession and avoidance).  As Petitioner's duress defense did not "detract," *i.e.*, improperly shift the prosecution's burden to prove all elements of the underlying offenses at trial, including Petitioner's intent to steal, beyond a reasonable doubt, Petitioner's claim that the evidence in support of his duress defense negated the jury's finding against Petitioner on the intent element raises no due process violation for purposes of federal habeas review.  *See Harris v. Fischer*, 438 Fed. Appx. 11, 13 (2d Cir. 2011) (affirmative defense claim under New York scheme not cognizable for federal habeas review where defendant's burden of proof to establish affirmative defense does not detract from prosecution's burden to prove all elements of crime beyond a reasonable doubt at trial).  As such, regardless of how construed, Petitioner's First Ground for relief is without merit and the Appellate Division did not unreasonably apply Supreme Court precedent in resolving this claim against Petitioner.

### D. Second Ground - Jury Notes

Petitioner contends the trial court erred in handling two jury notes in violation of Petitioner's due process right and under the Confrontation Clause of the Sixth Amendment.  Petitioner's Memorandum at 16.

#### First Jury Note (Court Exh. 2)

In particular, Petitioner asserts that the record fails to show that after the trial court judge received a note submitted by the jury at 3:48 P.M. ("the first jury note"), whether counsel was notified that the first jury note existed, and whether the trial court properly responded to the note's request for "all of the evidence."  Petitioner's Memorandum at 13.  Respondent concedes the trial court judge erred in not reading the first jury note into the record with counsel and Petitioner present, Respondent's Memorandum at 14, but contends that such error is harmless in the context of Petitioner's request for habeas relief.  *Id.*

The Confrontation Clause of the Sixth Amendment provides a criminal defendant the right "to be present at all stages of the trial where his absence might frustrate the fairness of proceedings."  *Cohen v. Senkowski*, 290 F.3d 485, 488 (2d Cir. 2002).  A defendant's right to be present has been extended to require that messages in any note from a jury be disclosed to counsel and the accused, and that counsel be afforded an opportunity to be heard on the note before the trial court judge issues a response to the jury.  *See United States v. Mejia*, 356 F.3d 470, 474 (2d Cir. 2004) (quoting *United States v. Ronder*, 639 F.2d. 931, 934 (2d Cir. 1981) (citing *Rogers v. United States*, 422 U.S. 35, 39 (1975))).  In cases where a defendant's constitutional rights have been violated as a result of trial error, federal habeas relief is warranted only in instances

where such error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *See Diaz v. Herbert*, 317 F.Supp.2d 462, 475 (S.D.N.Y. 2004) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946))).  The Second Circuit employs a "fair assurance" standard to review whether such violations affect the verdict of a jury.  *See Krische v. Smith*, 662 F.2d. 177, 180 (2d Cir. 1981).

In this case, defense counsel and the prosecutor both agreed to providing the physical evidence, admitted into evidence by the court, to the jury in the event the jury requested such evidence.  (Tr. at 268).  The jury began deliberations at 3:41 P.M., and at 3:48 P.M., sent a note to the trial court stating "[w]e want all the evidence," as marked as Court's Exhibit 2 at 3:50 P.M. (Court's Exh. 2).  The jury note, sent to the court a mere seven minutes after the jury began deliberations was therefore a request for the physical evidence which the court had previously informed the jury it could request, (Tr. at 233), of which counsel were aware, to expedite its deliberations and did not constitute a request for substantive testimony to which Petitioner's right to meaningful notice attached.

As evidence requested by the jury in the first jury note was not tantamount to a request for substantive testimonial evidence, *see Crawford v. Washington*, 541 U.S. 36, 51 (2004) (Confrontation Clause requirements limited to testimonial matters), or substantive instructions, *see Dobbin v. Greiner*, 249 F.Supp.2d 241, 261 (S.D.N.Y. 2002) (no error where jury note was not a request for clarification of questions of law or further substantive instructions (citing *Krische*, 662 F.2d at 180)), no violation of Petitioner's rights under the Confrontation Clause of the Sixth Amendment occurred

when the trial court complied with the jury's request to provide the physical evidence, as stated in the first jury note, in Petitioner's absence.  As to this claim, the Petition is without merit.

### Second Jury Note (Court Exh. 3)

Petitioner asserts that the trial court's failure to read the second jury note sent by the jury to the court at 5:45 P.M. ("the second jury note") into evidence contravened defense counsel's right to respond to the note, and allowed improper communication between the prosecutor and jury by allowing the prosecutor to structure the read-back testimony to the jury in the jury's presence.  Petitioner's Memorandum at 15.

The second jury note stated "(1) need Anthony Lee testimony and cross examination (2) Lieutenant Michalek testimony about conversation in holding room." The note was marked into evidence as Court's Exhibit 3 (Court's Exh. 3) at 5:45 P.M., and at 6:01 P.M., upon the jury re-entering the courtroom with counsel and Petitioner present.  The trial court described the jury note:

> Court Q: Okay. I have received a note from the foreperson and I have shown it to both attorneys and this note indicates that, number one, you wish to have the testimony of the victim Anthony Lee, it says testimony and cross-examination. It doesn't say if you wanted any particular aspect or part of the testimony, so we didn't know if you wanted just all of it read back or if there was something you were looking for specifically. (Whereupon, the jury conferred amongst each other off the record.)
> Juror A: The point of the robbery on.
> Court Q: The point of the robbery on, very good. Thank you. We're going to do that right now. (Discussion off the record.)
> Folicamo A: September 3rd , 2008.
> Court Reporter Q: Do you want me to start at, Were you working on September 3rd , 2008?
> Court A: And then after she reads it, if you don't want any more, just let us know. (Whereupon, the requested testimony was read back by the reporter.)
> Juror A: Hold on, hold on.

Court A: That's enough. Now she's going to look for the cross -- is there any particular area of cross-examination that you wanted her to look for as well? I know there's a second request but I'm still asking about this witness.
Juror A: We are done with that.
Juror A: We are done with that.
Court Q: We're done with that witness. Okay. We're just doing what you request. Now, second request says this about lieutenant-- the lieutenant's testimony about conversation in holding room. We don't know if you meant the conversation between the two codefendants or the conversation between the police officer and the defendant. We don't know what you meant.
Juror A: The -- where he was describing what he heard them say.
Court Q: Between the codefendants.
Juror A: Yes.
Folicamo A: So that starts with his cross and then my redirect -- my redirect.
Court Q: Could you come up? And they're going to try to find it so they can get the right part for you. (Whereupon, the requested testimony was read back by the reporter).
Court Q: That was it. That you're indicating that was it?
Juror A: Yes.

(Tr. at 269-71) (underlining added).

While the transcript does not provide the actual discussion among the court, the Assistant District Attorney Filocamo and Mr. Cutting, Petitioner's defense counsel, the record does indicate that the trial court judge discussed the second jury note with the prosecution, defendant, and defense counsel outside of the presence of the jury (Tr. at 268-69). Significantly, neither prior to the judge's return nor after the read-back which was, according to the record, responsive to the jury's request, as stated in the second jury note, did Petitioner's attorney offer any objection contradicting the court's statement that the note had been discussed with defense counsel and Petitioner, as the record indicates, *see* (Tr. at 268) ("5:58 P.M. counsel and defendant present"). While this read-back involved trial testimony, the record demonstrates Petitioner was present with his attorney, and, as such, there was no violation of Petitioner's right under the Confrontation Clause, as limited to matters of testimonial evidence, *see Crawford*, 541

U.S. at 51, and the Appellate Division did not unreasonably apply applicable Supreme Court precedent in resolving this issue against Petitioner.  *See Hammond*, 922 N.YS.2d 706 at 708.

Petitioner's claim for relief on this ground is therefore without merit.

## CONCLUSION

Based on the foregoing, the Petition is DISMISSED.  No Certificate of Appealability shall issue.  The Clerk of the Court is directed to close this file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      January 15, 2015
            Buffalo, New York

**Any petition for permission to appeal to the United States Court of Appeals for the Second Circuit, New York, New York, must be filed with the Circuit Clerk within thirty (30) days of the date of judgment in this action.  *See* Fed.R.App. 4(a)(1)(A).  Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.**